UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

123RF LLC,

               Plaintiff,

          v.                             Case No. 1:21-cv-08519-NRB

HSBC BANK USA, N.A.,

               Defendant.

_____

**DEFENDANT, HSBC BANK USA, N.A.'S,**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Respectfully submitted,

PHILLIPS LYTLE LLP
Attorneys for Defendant
*HSBC Bank USA, N.A.*
620 Eighth Avenue, 38th Floor
New York, New York  10018-1442
Telephone No. (212) 759-4888

Preston L. Zarlock
Jeremy M. Amar-Dolan
– Of Counsel –

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.............................................................................ii

PRELIMINARY STATEMENT ...................................................................... 1

BACKGROUND.............................................................................................. 2

    A.    Plaintiff's initial complaint and HSBC's proposed motion to dismiss ............ 2

    B.    Plaintiff's new Amended Complaint still fails to cure its pleading defects...... 3

ARGUMENT .................................................................................................. 4

POINT I      PLAINTIFF'S CLAIMS ARE ALL BARRED BY THE CONTRACTUALLY AGREED UPON ONE-YEAR STATUTE OF LIMITATIONS ................................................................. 5

POINT II    PLAINTIFF'S STATUTORY AND COMMON-LAW CLAIMS ARE DISPLACED BY ARTICLE 4-A..............................................10

POINT III   PLAINTIFF'S NON-CONTRACTUAL CLAIMS ARE ALSO BARRED BY THE ECONOMIC LOSS DOCTRINE...............................................12

POINT IV   PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ........................................14

    A.    Plaintiff fails to state a claim for negligence or gross negligence.........14

    B.    Plaintiff fails to state a GBL § 349 claim............................................15

    C.    Plaintiff fails to state a claim for breach of fiduciary duty .................17

    D.    Plaintiff fails to state a claim for fraud ...............................................18

    E.    Plaintiff fails to state a claim for breach of the covenant of good faith and fair dealing ..............................................................................20

CONCLUSION ..............................................................................................22

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*,
  816 F. Supp. 2d 222 (S.D.N.Y. 2011), *aff'd*, 503 F. App'x 51 (2d Cir. 2012) .......... 11, 14

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank Nat'l Ass'n*,
  731 F.2d 112 (2d Cir. 1984) ......................................................................................17

*Abhyankar by Behrstock v. JPMorgan Chase, N.A.*,
  No. 18-cv-9411, 2020 WL 4001661 (S.D.N.Y. July 15, 2020) ............................... 14, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................4, 5

*Banco Del Austro, S.A. v. Wells Fargo Bank, N.A.*,
  215 F. Supp. 3d 302 (S.D.N.Y 2016)..................................................................... 11, 14

*Banco Multiple Santa Cruz, S.A. v. Moreno*,
  888 F. Supp. 2d 356 (E.D.N.Y. 2012) .......................................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................. 4

*Bibicheff v. Chase Bank USA, N.A.*,
  No. 17-cv-4679, 2018 WL 4636817 (E.D.N.Y. Sept. 26, 2018) ....................................12

*BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, N.A.*,
  247 F. Supp. 3d 377 (S.D.N.Y. 2017)........................................................................12

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
  949 F. Supp. 2d 486 (S.D.N.Y. 2013)........................................................................13

*Boart Longyear Ltd. v. All. Indus., Inc.*,
  869 F. Supp. 2d 407 (S.D.N.Y. 2012)........................................................................21

*Caputo v. Pfizer, Inc.*,
  267 F.3d 181 (2d Cir. 2001) .....................................................................................18

*Centre-Point Merch. Bank Ltd. v. Am. Express Bank Ltd.*,
  913 F. Supp. 202 (S.D.N.Y. 1996) ....................................................................... 10, 11

*Chambers v. HSBC Bank USA, N.A.*,
  No. 19-cv-10436, 2020 WL 7261155 (S.D.N.Y. Dec. 10, 2020) ............................. 16, 21

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ....................................................... 5

*CLA Milton, LLC v. N. Am. Elite Ins. Co.*,
No. 20-cv-9458, 2022 WL 347621 (S.D.N.Y. Feb. 4, 2022) ............................ 6

*Corbett v. Firstline Sec., Inc.*,
687 F. Supp. 2d 124 (E.D.N.Y. 2009) ............................................... 6

*Costoso v. Bank of Am., N.A.*,
74 F. Supp. 3d 558 (E.D.N.Y. 2015) .......................................... 16, 21

*D & S Restoration, Inc. v. Wenger Constr. Co.*,
160 A.D.3d 924 (2d Dep't 2018) .................................................. 8

*Ely-Cruikshank Co. v. Bank of Montreal*,
81 N.Y.2d 399 (1993) ........................................................... 8

*Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*,
328 F. Supp. 2d 443 (S.D.N.Y. 2004)............................................. 15

*Fishberg v. State Farm Fire & Cas. Co.*,
No. 20-cv-6664, 2021 WL 3077478 (S.D.N.Y. July 20, 2021) ...................... 16

*Fleisig v. ED&F Man Cap. Markets, Inc.*,
No. 19-cv-8217, 2021 WL 2678675 (S.D.N.Y. June 30, 2021) ...................... 5

*Gorham-Dimaggio v. Countrywide Home Loans, Inc.*,
592 F. Supp. 2d 283 (N.D.N.Y. 2008)............................................ 17

*Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*,
17 N.Y.3d 565 (2011) .......................................................... 14

*Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*,
73 A.D.3d 571 (1st Dep't 2010) ................................................. 17

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
571 U.S. 99 (2013) ...........................................................6, 7

*IKEA N. Am. Servs., Inc. v. Ne. Graphics, Inc.*,
56 F. Supp. 2d 340 (S.D.N.Y. 1999) ............................................ 19

*Khurana v. Wahed Inv., LLC*,
No. 18-cv-0233, 2020 WL 364794 (S.D.N.Y. Jan. 8, 2020)......................... 19

*Kleinman v. Elan Corp., PLC*,
706 F.3d 145 (2d Cir. 2013) .................................................... 5

*Labajo v. Best Buy Stores, L.P.*,
    478 F. Supp. 2d 523 (S.D.N.Y. 2007)......................................................................13

*Lanzi v. Brooks*,
    43 N.Y.2d 778 (1977) ..............................................................................................20

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) .....................................................................................18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*,
    797 F.3d 160 (2d Cir. 2015) .....................................................................................19

*Ma v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
    597 F.3d 84 (2d Cir. 2010)................................................................................. 9, 11

*MeehanCombs Glob. Credit Opportunities Funds, LP v. Caesars Ent. Corp.*,
    80 F. Supp. 3d 507 (S.D.N.Y. 2015) .................................................................. 20, 21

*Merryman v. J.P. Morgan Chase Bank, N.A.*,
    No. 15-cv-9188, 2016 WL 5477776 (S.D.N.Y. Sept. 29, 2016)....................................21

*MPI Tech A/S v. Int'l Business Machines Corp.*,
    No. 15-cv-4891, 2017 WL 481444 (S.D.N.Y. Feb. 6, 2017) ......................................... 8

*Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Tr. Co.*,
    410 F. Supp. 3d 662 (S.D.N.Y. 2019).......................................................................12

*New York Univ. v. Cont'l Ins. Co.*,
    87 N.Y.2d 308 (1995) ..............................................................................................20

*Papp v. Debbane*,
    16 A.D.3d 128 (1st Dep't 2005) ................................................................................20

*Perks v. TD Bank, N.A.*,
    444 F. Supp. 3d 635 (S.D.N.Y. 2020)................................................................... 16, 17

*ReAmerica, S.A. v. Wells Fargo Bank Int'l*,
    577 F.3d 102 (2d Cir. 2009) .....................................................................................11

*Receivers of Sabena S.A. v. Deutsche Bank A.G.*,
    142 A.D.3d 242 (1st Dep't 2016) ..............................................................................10

*Regatos v. North Fork Bank*,
    5 N.Y. 3d 395 (2005) ......................................................................................... 6, 9, 10

*Rutkowski v. First Horizon Home Loans*,
    117 A.D.3d 1265 (3d Dep't 2014) ......................................................................... 7, 14

*Soley v. Wasserman,*
    823 F. Supp. 2d 221 (S.D.N.Y. 2011)......................................................................20

*Tevdorachvili v. Chase Manhattan Bank,*
    103 F. Supp. 2d 632 (E.D.N.Y. 2000) .....................................................................17

*United States ex rel. Gelbman v. City of New York,*
    790 F. App'x 244 (2d Cir. 2019)..............................................................................18

*Valentini v. Citigroup, Inc.,*
    837 F. Supp. 2d 304 (S.D.N.Y. 2011)......................................................................13

*Vega v. Fed. Exp. Corp.,*
    No. 09-cv-7637, 2011 WL 4494751 (S.D.N.Y. Sept. 29, 2011) .....................................6

*Wechsler v. HSBC Bank USA, N.A.,*
    No. 15-cv-5907, 2016 WL 1688012 (S.D.N.Y. Apr. 26, 2016), *aff'd*, 674 F.
    App'x 73 (2d Cir. 2017) ...................................................................5, 6, 7, 8, 9, 10

*Zumpano v. Quinn,*
    6 N.Y.3d 666 (2006) ...............................................................................................8

**Statutes**

CPLR 201 ..............................................................................................................5

Fed. R. Civ. P. 9(b)..........................................................................................18, 19

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 4

N.Y. Gen. Bus. Law § 349 ...............................................................................15, 16

UCC § 4-A-102...................................................................................................10

UCC § 4-A-505.................................................................................................6, 9

Defendant, HSBC Bank USA, N.A. ("HSBC"), submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff 123RF LLC's ("Plaintiff") Amended Complaint, Dkt. No. 25 ("Am. Compl."), with prejudice.[1]

## PRELIMINARY STATEMENT

Plaintiff, a large and sophisticated multinational media company, alleges that it has lost hundreds of thousands of dollars through a series of relatively small, but allegedly unauthorized, electronic payments issued to various credit card companies from its HSBC commercial bank account. Unable or unwilling to identify the source of the withdrawals, Plaintiff now seeks to shift its losses to HSBC by way of its kitchen-sink complaint, which asserts eight overlapping claims for relief.

Despite receiving an opportunity to amend its complaint after previewing the substance of the instant motion, Plaintiff's complaint remains lacking and its claims must be dismissed. Plaintiff's amendment did nothing to correct the serious deficiencies in its pleading. First, the claims are untimely because of the expiration of the agreed contractual one-year limitations period that began to run upon the occurrence of the first in the series of allegedly fraudulent payments. Despite admitting that it knew of the payments within a few months, Plaintiff waited over a year before filing this lawsuit, which is now untimely.

The limitations issue alone disposes of this action in its entirety. Nevertheless, there are various additional reasons why Plaintiff's claims fail. For one thing, Plaintiff's common law claims are preempted by UCC Article 4-A. Additionally, its tort

---

[1] For ease of reference the Amended Complaint is attached as Exhibit 2 to the Declaration of Preston L. Zarlock dated March 7, 2022 ("Zarlock Dec.").

claims are precluded by the economic loss doctrine.  And its tort and fraud claims fail to state a claim for a variety of reasons explained more fully below.

## BACKGROUND

### A.    Plaintiff's initial complaint and HSBC's proposed motion to dismiss

Plaintiff filed its initial complaint on October 15, 2021.  *See* Dkt. No. 1. (Zarlock Dec., Ex. 1).  Such complaint alleged that over many months, hundreds of relatively small but improper ACH payments to various credit card companies were made from its account beginning in January 2020.  *Id*. ¶ 28.  Plaintiff alleged that it first attempted to contact HSBC in August 2020, and advised HSBC of the allegedly fraudulent transactions in March 2021.  *See id*. ¶¶ 31-37.  Plaintiff has acknowledged that HSBC was able to recover hundreds of thousands of dollars for its benefit.  *Id.* ¶ 44.  In its initial Complaint, Plaintiff alleged only that it attempted to determine the source of the allegedly unauthorized payments by making "inquiries across the organization." *Id.* ¶ 29.

Plaintiff's first Complaint suggested *nine* claims:  (1) breach of N.Y. UCC § 4-A-204(1); (2) gross negligence; (3) negligence; (4) breach of contract; (5) violation of N.Y. Gen. Bus. Law § 349; (6) breach of fiduciary duty; (7) fraud; (8) conversion; and (9) breach of the implied covenant of good faith and fair dealing.  *Id.* ¶¶ 64-119.

Pursuant to this Court's Individual Rule 2(B), HSBC filed a letter on December 13, 2021 requesting a pre-motion conference for its motion to dismiss Plaintiff's claims.  Dkt. No. 21.  In that letter, HSBC argued that Plaintiffs' claims fail because they are each untimely under the parties' agreed-upon one-year statute of limitations, are displaced by Article 4-A of the UCC, and/or fail to state a claim upon which relief can be granted.  *Id.*  Plaintiff filed its opposition letter ("Opp. Letter") on December 16, 2021.  Dkt.

No. 22).  A conference was held on January 10, 2022, at which time the Court provided

Plaintiff with an opportunity to amend its pleading in response to HSBC's arguments, and

stated that if Plaintiff wished to amend its pleading it should do so before HSBC's motion

was made, not after.  Plaintiff advised that it intended to amend, and the parties entered into

a stipulation for briefing HSBC's motion to dismiss the amended pleading which was

Ordered by the Court.  Dkt. No. 24.

**B.      Plaintiff's new Amended Complaint still fails to cure its pleading defects**

Plaintiff filed its Amended Complaint on February 14, 2022.  Dkt. No. 25.  Its

core allegations remain the same as those in the initial complaint.  Plaintiff alleges that it

opened a commercial bank account with HSBC in 2012 and that its relationship with HSBC

is governed by the U.S. Commercial Deposit Account Agreement ("USCDAA") that

Plaintiff attaches to and incorporates into its pleading.  Am. Compl. ¶ 15.  Plaintiff alleges

that, beginning in January or February 2020, a number of ACH payments in the "low

hundreds to the low thousands of dollars" were made from the account to various credit

card companies.  *Id.* ¶ 32.  Though it allegedly discovered the transfers in April 2020, *id.*,

Plaintiff did not contact HSBC until August 2020, *id.* ¶ 49.  The Amended Complaint

describes a few intermittent attempts thereafter, but the first time Plaintiff allegedly shared

information specifically identifying the allegedly unauthorized transactions was in March

2021, over a year after the first improper payments were allegedly made and nearly a year

after Plaintiff admittedly discovered them.  *Id.* ¶¶ 50-54.  Nevertheless, HSBC was able to

recover over $430,000 of the funds Plaintiff claims was improperly withdrawn.  *Id.* ¶ 61.

The changes Plaintiff made in its Amended Complaint are largely cosmetic and none address the core defects raised by HSBC in its pre-motion letter.[2]  First, Plaintiff dropped its claim against HSBC for conversion.  Second, Plaintiff now alleges that improper ACH payments of a few hundred dollars were made from its account in November and December 2021, but acknowledges that HSBC has refunded those payments.[3]  *Id.* ¶¶ 45-80. Third, presumably in support of its fraud claim, Plaintiff attributes some vague language (e.g., "we get it done") to HSBC, apparently from its website.  *Id.* ¶ 19.  Fourth, Plaintiff adds some general allegations about the prevalence of ACH fraud.  *Id.* ¶¶ 33-35.  Finally, it adds some additional details regarding its internal investigation as to the payments, *id.* ¶¶ 36-41, none of which (even if true) demonstrate conclusively that the payments did not result from the actions of a dishonest employee.  Despite the Court giving Plaintiff the opportunity to replead, none of the new allegations do anything to bolster its claims.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must assert sufficiently detailed factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Legal conclusions or bare assertions that are couched as factual allegations do not suffice.  *See id.* (citing *Twombly*, 550 U.S. at 555).  Accordingly, a plaintiff is required to

---

[2] A redline version of the Amended Complaint, showing the changes from the initial Complaint, is attached to the Zarlock Dec. at Ex. 3.

[3] Plaintiff, paradoxically, alleges that HSBC's ability to recover a significant portion of the payments demonstrates its "guilt." *Id.* ¶ 46.  This ignores the far more likely explanation, which is that HSBC has made good faith efforts to recover Plaintiff's funds when it is promptly notified and it is possible to do so.  In any event, Plaintiff's incorrect and conclusory allegation of "guilt" is not entitled to the presumption of truth at the motion to dismiss stage.

support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

On a motion to dismiss, a court may consider documents attached to the complaint; statements or documents incorporated into the complaint by reference; matters of which judicial notice may be taken, such as public records; and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit.  *See, e.g., Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (applying that rule to district courts); *accord Wechsler v. HSBC Bank USA, N.A.*, No. 15-cv-5907, 2016 WL 1688012, at *1 (S.D.N.Y. Apr. 26, 2016), *aff'd*, 674 F. App'x 73 (2d Cir. 2017).

## POINT I

## PLAINTIFF'S CLAIMS ARE ALL BARRED BY THE CONTRACTUALLY AGREED UPON ONE-YEAR STATUTE OF LIMITATIONS

The parties' USCDAA (Exhibit A to the Amended Complaint), which Plaintiff acknowledges governs the relationship between the parties, contains a limitations clause (the "Limitations Clause") that provides in relevant part:

> The Customer agrees to bring any claims or legal action relating to the Services in writing within one (1) year of the date the problem occurred . . . .  If the problem involves a series of events, the Customer agrees that the date the first event occurred will be the date by which the period to make any claim or bring any legal action begins to run.

Dkt. No. 25-1 at 11.  "Under New York law, the parties to a written agreement may prescribe a shorter limitations period for commencing an action related to that agreement than the period prescribed by the statute of limitations."  *Fleisig v. ED&F Man Cap. Markets, Inc.*, No. 19-cv-8217, 2021 WL 2678675, at *8 (S.D.N.Y. June 30, 2021); *see also* CPLR 201

(permitting "a shorter time [to be] prescribed by written agreement"); *CLA Milton, LLC v. N. Am. Elite Ins. Co.*, No. 20-cv-9458, 2022 WL 347621, at *3 (S.D.N.Y. Feb. 4, 2022) (citing cases); *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 106 (2013).

According to the Amended Complaint, the first allegedly unauthorized payments occurred in January and February 2020 and were discovered in April 2020. *See* Am. Compl. ¶ 32. No claim or legal action was filed until October 15, 2021, well over one year after the "first event" in the alleged "series of events." *See* Dkt. No. 1. Plaintiff's claims are therefore untimely.

In its Opp. Letter, Plaintiff contends that the Limitations Clause, which sets the statute of limitations at one year for any claim related to Plaintiff's account, is unreasonable to the extent it establishes a "series of events" accrual date and because enforcing it would violate the ruling in *Regatos v. North Fork Bank*, 5 N.Y. 3d 395 (2005) that the parties may not shorten the one-year period of repose under UCC § 4-A-505. Opp. Letter at 2. Neither of these arguments has merit.

To the contrary, a virtually identical clause providing for a one-year limitations period that accrues upon the first of a series of events has been held entirely enforceable.[4] In *Wechsler*, the plaintiff sued HSBC based on a series of withdrawals that had been made from his account for fees beginning on January 31, 2014 and continuing monthly thereafter until plaintiff filed suit on July 28, 2015. 2016 WL 1688012 at *2-3. HSBC

---

[4] Notably, in its Opp. Letter, Plaintiff did not challenge the legality of a one-year contractual limitations clause in general. Nor can it. "One-year contractual limitations periods—indeed, even shorter limitations periods of six months—have consistently been held to be reasonable under New York law." *Wechsler*, 2016 WL 1688012, at *2 (citing *Vega v. Fed. Exp. Corp.*, No. 09-cv-7637, 2011 WL 4494751, at *6 (S.D.N.Y. Sept. 29, 2011) (collecting cases holding six months to be reasonable) and *Corbett v. Firstline Sec., Inc.*, 687 F. Supp. 2d 124, 128 (E.D.N.Y. 2009) (collecting cases holding one year to be reasonable)).

moved to dismiss, contending that, by operation of the limitations clause, the action was

time-barred because it was not brought within one year of the *first* withdrawal.  In a passage

that is directly on-point here, Judge Furman expressly rejected the same argument Plaintiff

makes in its Opp. Letter and granted the motion to dismiss:

> None of Wechsler's arguments to the contrary is persuasive.
> First, while not taking issue with the one-year limitations
> period itself, he contends that beginning that period with the
> first monthly charge would be unreasonable because it would
> effectively immunize HSBC from liability and allow it to
> "continue to impose unlawful charges in perpetuity simply
> because Plaintiff did not file a legal action . . . within one year."
> Notably, however, he cites no case holding such an accrual
> provision invalid.  Instead, he relies on the general contract
> principle that each successive breach of a contract constitutes a
> new breach.  But that principle has no application where, as
> here, the parties have crafted their own limitations rules by
> contract, as precedent "necessarily allows parties to agree not
> only to the length of a limitations period but also to its
> commencement."  Further, Wechsler's approach would
> undermine the Limitations Clause altogether, as it would
> effectively allow him to file suit at any time in perpetuity,
> contrary to the clear intent of the agreement.

*Id*. at *3 (internal citations omitted) (quoting *Heimeshoff*, 571 U.S. at 107).

On Wechsler's appeal, the Second Circuit affirmed the dismissal of the action,

upholding the limitations clause and rejecting the same challenge Plaintiff makes here to the

provision rendering the first of a "series of events" the trigger for the statute of limitations:

> Specifically, Wechsler contends that application of the
> Limitations Clause would allow HSBC to continue to levy
> illegal maintenance fees, and Wechsler would not be able to sue
> to stop these future violations.  That might be, but the
> limitation on suit to which Wechsler agreed is not
> unreasonable.  Nothing prevented Wechsler from filing his
> lawsuit within a year of the first maintenance fee.  Indeed,
> Wechsler concedes that he called HSBC to complain about the
> maintenance fees within the one-year limitations period, and
> that the bank asserted that it had the right to assess such fees.
> Soon after this call, HSBC assessed another maintenance fee on

> Wechsler's account.  That charge occurred a month before the
> year expired.  We fail to see any unique circumstance in this
> case that would defeat the normal rule that one-year limitation
> periods are reasonable.

*Wechsler*, 674 F. App'x at 75.  The same reasoning applies here. The first allegedly improper

payments from its account occurred in January or February 2020 and Plaintiff alleges that it

was aware of those payments in April 2020.  Am. Compl. ¶ 36.  Nothing prevented Plaintiff

from filing suit within one year of the first alleged payment.  The Limitations Clause should

be enforced, consistent with *Wechsler*, and Plaintiff's action dismissed as untimely.

  *Weschler* is not an outlier.  Indeed, a court in this District dismissed a similar

challenge to a contractually shortened limitations period even where the plaintiff, contrary

to the alleged facts here, was unaware of the factual basis of its claims within the limitations

period.  *MPI Tech A/S v. Int'l Business Machines Corp.*, No. 15-cv-4891, 2017 WL 481444, at

*4-5 (S.D.N.Y. Feb. 6, 2017).  There, citing *Weschler*, the Court held:

> To the extent MPI argues that it could not bring some of its
> claims within the limitations period because it only later
> discovered their factual basis, that hardship is not unique to the
> MWA's limitations period.  Under New York law, "knowledge
> of the occurrence of the wrong on the part of the plaintiff is not
> necessary to start the Statute of Limitations running in a
> contract action."  Also, since any limitations period may
> "sometimes impose[] hardship on a plaintiff with a meritorious
> claim," a statute of limitations "cannot be deemed arbitrary or
> unreasonable solely on the basis of a harsh effect."

2017 WL 48144, at *5 (internal citations omitted) (quoting *Ely-Cruikshank Co. v. Bank of*

*Montreal*, 81 N.Y.2d 399, 403 (1993) and *Zumpano v. Quinn*, 6 N.Y.3d 666, 706 (2006)).[5]

---

[5] *D & S Restoration, Inc. v. Wenger Constr. Co.*, 160 A.D.3d 924 (2d Dep't 2018), cited by Plaintiff, Opp. Letter at
2, is not to the contrary.  There, the shortened statute of limitations for a subcontractor to sue the contractor
was unenforceable solely because the contract also imposed a condition precedent to the suit, namely payment
becoming due to subcontractor, which was not in subcontractor's control and could not have been met with
any diligence within the limitations period.  *Wenger*, 160 A.D.3d at 926.

Plaintiff's reliance on *Regatos*, Opp. Letter at 2, fails for at least two reasons. First, *Regatos* is entirely inapposite and had nothing to do with a shortened statute of limitations.  Rather, *Regatos* held that a bank could neither shorten by agreement the one-year statute of *repose* under UCC § 4-A-505 to 15 days nor rely on an account holder's constructive notice of account information he did not receive.[6]  *Regatos*, 5 N.Y.3d at 404. "Statutes of repose and statutes of limitations are often confused, though they are distinct. A statute of limitations creates an affirmative defense where plaintiff failed to bring suit within a specified period of time after his cause of action accrued, often subject to tolling principles.  By contrast, a statute of repose *extinguishes* a plaintiff's cause of action after the passage of a fixed period of time, usually measured from one of the defendant's acts."  *Ma v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 92, n.4 (2d Cir. 2010) (citations omitted).  The fact that neither the District Court nor the Second Circuit in *Wechsler* felt *Regatos* was a bar to enforcing the Limitations Clause speaks volumes.  Simply put, to the extent the statute of repose under § 4-A-505 has relevance, it is only that it would be *another* bar that would apply to all of Plaintiff's claims under any theory—albeit one that would need to be raised on summary judgment.  *See Ma*, 597 F.3d at 90 (granting summary judgment to bank dismissing all of customer's claims and holding that one-year period of repose in UCC § 4-A-505 "applies to claims asserting the existence of unauthorized wire transfers regardless of what the claims may be called").

---

[6] UCC § 4-A-505 provides that "[i]f a receiving bank has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank, and the customer received notification reasonably identifying the order, the customer is precluded from asserting that the bank is not entitled to retain the payment unless the customer notifies the bank of the customer's objection to the payment within one year after the notification was received by the customer."

Second, the Limitations Clause involved here and approved in *Wechsler* is one year, not less than one year.  Thus, even if *Regatos* had any application to this motion (it does not), the Limitations Clause would not violate it, because the holding struck down a period of *less* than one year.  *See* 5 N.Y.3d at 404.  Here, Plaintiff has admitted to receiving notice of the series of events in early April 2020, Am. Compl. ¶ 32, eight months before its claims were barred under the Limitations Clause to which it agreed.  Unlike in *Regatos*, where the court found that "under the bank's reading of the statute, an agreed 15-day notice period could run before a bank statement was even available for the customer's review," *id.* at 404, Plaintiff had more than sufficient time to assert its claims.

## POINT II

### PLAINTIFF'S STATUTORY AND COMMON-LAW CLAIMS ARE DISPLACED BY ARTICLE 4-A

UCC Article 4-A is "intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article."  UCC § 4-A-102 official comment (emphasis added).  Where the purported basis of liability falls squarely within the scope of a provision of Article 4-A— here, the duty to refund an allegedly unauthorized electronic funds transfer—the UCC displaces other remedies.  *See id.*; *see also Centre-Point Merch. Bank Ltd. v. Am. Express Bank Ltd.*, 913 F. Supp. 202, 208 (S.D.N.Y. 1996) ("Since there are specific Article 4-A provisions concerning these covered transactions, common law remedies are precluded in this area.").

Bearing these principles in mind, Plaintiff's claims, all of which relate to purportedly unauthorized ACH transfers, are displaced and preempted by Article 4-A.  *See Receivers of Sabena S.A. v. Deutsche Bank A.G.*, 142 A.D.3d 242, 252-53 (1st Dep't 2016)

(stating that Article 4-A was intended to provide the exclusive means for determining the rights, duties, and liabilities regarding electronic fund transfers).

Plaintiff does not dispute that Article 4-A preempts some claims but contends that it does not entirely replace the common law.  Opp. Letter at 2.[7]  While that may be true, it is well settled that Article 4-A precludes any common law claims contending that an electronic funds transfer was unauthorized.  *See 2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*, 816 F. Supp. 2d 222, 236 (S.D.N.Y. 2011) (dismissing contract and gross negligence claims and explaining that "[a]ny common law claims about the existence of unauthorized wire transfers . . . fall within the regime of Article[] 4-A"), *aff'd*, 503 F. App'x 51 (2d Cir. 2012); *Banco Del Austro, S.A. v. Wells Fargo Bank, N.A.*, 215 F. Supp. 3d 302, 306-07 (S.D.N.Y 2016) (granting motion to dismiss negligence claim alleging that Wells Fargo "violated its duty of care by negligently honoring the" transfers as such claim "falls entirely within the coverage of Section 4-A-202, which creates a comprehensive system of risk allocation for unauthorized funds transfers.  . . .  Negligence liability above and beyond the commands of Section 4-A-202 would be inconsistent with that section."); *Ma*, 597 F.3d at 90 ("Since all of [plaintiff]'s claims are, at their core, assertions that he did not order or approve any of the disputed electronic transfers of funds from his accounts, we are bound to recognize the rights and duties New York law provides for precisely these circumstances.") (citing as "instructive" *ReAmerica, S.A. v. Wells Fargo Bank Int'l*, 577 F.3d

---

[7] Plaintiff relies on *Centre-Point* for its argument that Article 4-A does not entirely preempt the common law in the wire-transfer area.  But *Centre-Point* declined to dismiss only common law claims unrelated to electronic transfers.  913 F. Supp. at 207-08.  As to those claims that "fall squarely within Article 4-A," the court found that "common law remedies are precluded . . . ." *Id.* at 208.

102, 106-07 (2d Cir. 2009) (finding negligence claim barred by expired statute of repose for

Article 4-A claim addressing same conduct)).

      In sum, because the transactions Plaintiff complains of are unequivocally

governed by the provisions of UCC Article 4-A, its other claims are preempted and

displaced.

### POINT III

### PLAINTIFF'S NON-CONTRACTUAL CLAIMS ARE
### ALSO BARRED BY THE ECONOMIC LOSS DOCTRINE

      Plaintiff's non-contractual claims are also precluded by the economic loss

doctrine, which holds that a "plaintiff cannot seek damages by bringing a tort claim when

the injury alleged is primarily the result of economic injury for which a breach of contract

claim is available." *Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Tr. Co.*, 410 F. Supp.

3d 662, 687 (S.D.N.Y. 2019) ("*NCUA*").  This doctrine "'presents a second, distinct barrier'

to tort claims stemming from contractual relationships." *Id.* at 688-89 (quoting *BlackRock*

*Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, N.A.*, 247 F. Supp. 3d 377, 399

(S.D.N.Y. 2017)).  Put differently, the doctrine provides that where (as here) there is no

personal injury or property damage, a plaintiff simply cannot "improperly convert contract

claims into tort claims" to recover economic loss.  *See Bibicheff v. Chase Bank USA, N.A.*,

No. 17-cv-4679, 2018 WL 4636817, at *5 (E.D.N.Y. Sept. 26, 2018) (granting motion to

dismiss negligence claims based on allowing purportedly unauthorized charges on the

plaintiff's accounts).

      "[A]llegations that Defendant breached duties independent of its contracts do

not, themselves, 'allow evasion of the economic loss rule . . . .'" *NCUA*, 410 F. Supp. 3d at

688-89 (granting motion to dismiss negligence and breach of fiduciary duty claims based on

- 12 -

the economic loss doctrine) (citing cases); *see also Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 532 (S.D.N.Y. 2007) (dismissing negligence claim for false credit card charges and explaining that "economic loss is not recoverable under a theory of negligence"); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013) ("The purpose of this rule is . . . [t]o keep contract law from drown[ing] in a sea of tort."). Here, Plaintiff alleges only an economic injury; thus, its tort claims are barred for this additional reason.

Plaintiff's reliance on *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304 (S.D.N.Y. 2011), Opp. Letter at 2, is unavailing. That case rejected the economic loss doctrine for reasons that are not present here. First, the *Valentini* court found that plaintiff had not identified a contractual provision that was breached, and therefore that a breach of contract claim was not necessarily available. *See* 837 F. Supp. 2d at 328. Second, the court there found the existence of a fiduciary obligation and held that "the economic loss doctrine does not apply to negligence claims arising . . . out of 'the violation of a professional duty.'" *Id.* But, as explained below, Plaintiff has not adequately alleged a fiduciary relationship between it and HSBC, and none generally exists between a bank and depositor. *See infra* Point IV.C. Because no fiduciary or other relationship furnishes an extracontractual duty, the economic loss doctrine applies, requiring dismissal of Plaintiff's tort claims.

## POINT IV

## PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED[8]

**A.      Plaintiff fails to state a claim for negligence or gross negligence**

Plaintiff's gross negligence and negligence claims fail because the "relationship between a bank and its depositor is one of debtor and creditor" which does not support a cause of action for negligence. *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 578 (2011). "Typically, under New York law, a bank does not have an extracontractual duty to its depositors." *Abhyankar by Behrstock v. JPMorgan Chase, N.A.*, No. 18-cv-9411, 2020 WL 4001661, at *5 (S.D.N.Y. July 15, 2020) (collecting cases) (dismissing negligence claim for fraudulent wire transfer). Here, Plaintiff has "failed to allege a violation of a legal duty independent of the parties' contract." *Rutkowski v. First Horizon Home Loans*, 117 A.D.3d 1265, 1265 (3d Dep't 2014) (cleaned up). Indeed, the only purported duty Plaintiff identifies in connection with its gross negligence and negligence claims is that HSBC must "act as a reasonably prudent commercial banking company would act." Am. Compl. ¶¶ 101, 107. That duty—of bank to depositor—is defined in the parties' contract. In the absence of an alleged extracontractual duty, these claims are subject to dismissal.

---

[8] Plaintiff's intertwined UCC § 4-A-204 and breach of contract claims, Am. Compl. ¶¶ 89-99, 111-16, are similarly defective, but both depend on the terms and procedures set forth in the USCDAA, which determine whether the payment orders given to HSBC were "authorized" irrespective of Plaintiff's desire to now disavow them. *See 2006 Frank Calandra, Jr. Irrevocable Trust*, 816 F. Supp. 2d at 233-35 (granting bank's motion for summary judgment dismissing, *inter alia*, UCC Article 4-A and breach of contract claims and holding that authorization of payment orders was governed by the contractual agreement with the bank), *aff'd*, 503 F. App'x 51 (2d Cir. 2012). Because such an evaluation involves extra-complaint sources, however, it is "one that courts typically address at summary judgment." *Banco Del Austro*, 215 F. Supp. 3d at 306-07.

Plaintiff's reliance on *Banco Multiple Santa Cruz, S.A. v. Moreno*, 888 F. Supp. 2d 356 (E.D.N.Y. 2012) to ascribe tort duties to HSBC, Opp. Letter at 2-3, is woefully misplaced.  In *Banco Multiple*, an annuitant filed a third-party complaint alleging that an insurer negligently permitted his ex-wife to forge his signature on withdrawal slips to withdraw money from their joint annuity without his knowledge or authorization.  *Id.* at 361-62.  In denying the insurer's motion for summary judgment, the court held that though New York law generally treats insurer-insured relationships as contractual only, because variable annuities "are more like investment vehicles than traditional insurance" it would allow a negligence action against a company that issued a variable annuity.  888 F. Supp. 2d at 369-70, 374.  The court also held that an issuer of a variable annuity could be liable in tort for negligence arising out of independent legal duties in connection with the performance of its contractual duties, namely, processing withdrawal requests.  *Id.* at 374.  That holding has nothing to do with the alleged duties at issue here.[9]

**B.**   **Plaintiff fails to state a GBL § 349 claim**

Plaintiff's GBL § 349 claim fails for several independent reasons.  First, it fails *ab initio* because Plaintiff "is not the kind of consumer § 349 was intended to protect," but a sophisticated international business entity.  *Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 450 (S.D.N.Y. 2004) ("§ 349 . . . was designed to protect 'the little guy' from false advertising, pyramid schemes, bait-and-switch sales tactics, and other mischievous machinations by swindlers and scallywags").  Second, Plaintiff fails to

---

[9] The *Banco Multiple* court also noted the complex statutory framework (including the UCC) governing banks as one of the reasons "courts have been reluctant to add a threat of tort liability to those same transactions." 888 F. Supp. 2d at 371 n.17.  The court therefore distinguished its case from "precedents disclaiming the availability of torts" because "the specific statutory rules governing banking transactions [do not] control the disposition of this case." *Id.*  Here, where the statutory framework of Article 4-A clearly applies, those precedents do apply with force.

allege facts showing that the conduct it complains of is "consumer-oriented" or has "a broad impact on consumers at large." *Fishberg v. State Farm Fire & Cas. Co.*, No. 20-cv-6664, 2021 WL 3077478, at *4 (S.D.N.Y. July 20, 2021).

Third, Plaintiff's has failed to allege a materially misleading act. Where a plaintiff merely complains of a defendant's failure to satisfy its contractual duties, not that it has misrepresented any contractual terms, a § 349 claim should be dismissed. *See Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 575 (E.D.N.Y. 2015). Put differently, to allege a § 349 claim, the act or practice complained of must be "misleading in a material respect separate and apart" from the allegations of breach of contract. *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 642 (S.D.N.Y. 2020).

Here, the alleged deception by HSBC is duplicative of Plaintiff's claim that HSBC did not honor its agreements. *See* Am. Compl. ¶ 119 ("Defendant's deceptive practices were misleading in a material way. Plaintiff was induced to utilize Defendant's banking services and open the Account under the misleading guise that their Account was secure against unauthorized ACH debits."). Such allegations are redundant of Plaintiff's breach of contract claim and fail to state a § 349 claim. *See Costoso*, 74 F. Supp. 3d at 575 (granting motion to dismiss § 349 claim holding that "conduct of which [plaintiff] complains is essentially that the Defendant failed to satisfy its contractual duties, not that it concealed or misrepresented any contractual terms"); *Chambers v. HSBC Bank USA, N.A.*, No. 19-cv-10436, 2020 WL 7261155, at *5 (S.D.N.Y. Dec. 10, 2020) (granting motion to dismiss § 349 claim holding that even "assuming that Defendant improperly imposed a second NSF fee in contravention of the applicable agreements—Plaintiff has only alleged that HSBC did not follow its own contractual language").

Plaintiff's sprinkling in of claims of "deception" do not change the result. *See Perks*, 444 F. Supp. 3d at 642 (granting motion to dismiss § 349 claim as duplicative of GBL § 340 claim noting that "[a]lthough the Amended Complaint tersely alludes to deceptive 'advertising,' . . . that allegation is conclusory and appears to be no more than publicizing the terms of the allegedly breached contract without any sort of gloss, let alone with misleading representations of the terms of that contract").

## C.   Plaintiff fails to state a claim for breach of fiduciary duty

Plaintiff's breach of fiduciary duty fails because it has not alleged facts sufficient to establish that a fiduciary relationship existed between the parties. Indeed, "typically 'a fiduciary relationship . . . does not exist between a bank and its customer." *Abhyankar*, 2020 WL 4001661, at *4 (collecting cases) (quoting *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 73 A.D.3d 571, 572 (1st Dep't 2010)). "It is well established that absent specific contractual language or circumstances to the contrary, the ordinary relationship between a creditor and debtor does not rise to the level of imposing a fiduciary duty upon the creditor." *Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283, 294 (N.D.N.Y. 2008) (citations omitted). Thus, a "bank-depositor agreement standing alone creates no fiduciary relationship between the parties." *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 640 (E.D.N.Y. 2000) (citing *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank Nat'l Ass'n*, 731 F.2d 112, 122 (2d Cir. 1984) (holding that under New York law the "usual relationship" of bank and depositor involves no fiduciary duty)).

Here, Plaintiff alleges that HSBC was its fiduciary "by nature of the relationship whereby Plaintiff trusted and relied on the expertise of Defendant to manage Plaintiff's funds." Am. Compl. ¶ 123. This is nothing more than an allegation that the

parties had the relationship of bank and depositor.  Because Plaintiff has failed to allege a fiduciary relationship, this claim must be dismissed.

## D.   Plaintiff fails to state a claim for fraud

Plaintiff's Amended Complaint falls far short of the heightened requirement for pleading fraud.  Federal Rule of Civil Procedure 9(b) requires that a plaintiff "state with particularity the circumstances constituting fraud . . . ."  To satisfy Rule 9(b)'s particularity standard, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *United States ex rel. Gelbman v. City of New York*, 790 F. App'x 244, 247 (2d Cir. 2019); *see also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) ("To satisfy [Rule 9(b)'s particularity] requirement, a plaintiff should specify the time, place, speaker, and content of the alleged misrepresentations.").

Plaintiff's allegations fall far short of these "rigorously enforced" requirements.  *Gelbman*, 790 F. App'x at 247.  The alleged representations by HSBC which Plaintiff vaguely alludes to in its fraud claim are that HSBC "had security measures and controls in place to protect against unauthorized debits," that HSBC "represented that it stays vigilant, identifies threats, and investigates suspicious activity," and "that if it knows of a threat, it will act promptly, contact Plaintiff directly, and take necessary steps to help safeguard Plaintiff's banking information."  Am. Compl. ¶ 128.  Nowhere does Plaintiff specify the who, what, where, when, and how that Rule 9(b) requires.[10]

---

[10] Relatedly, although Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," courts do not permit speculative or  conclusory allegations of scienter; instead, "plaintiffs must allege facts that give rise to a *strong* inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (emphasis added).  Here, Plaintiff's *only* allegation of scienter—

Plaintiff's reliance on *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015) is misplaced.  *See* Opp. Letter at 3.  In *Loreley*, the court found that the plaintiff's pleading met the Rule 9(b) standard notwithstanding that it attributed false statements in a securities offering to a "cluster of subsidiaries" rather than a specific entity.  *Loreley*, 797 F.3d at 171-72.  The present case does not involve any representations as specific as made in a securities offering document.  Indeed, the only specific citations are to a general HSBC website about reporting fraud and another containing broad statement of HSBC's institutional values.  *See* Am. Compl. ¶ 19 & nn.1-3.

Plaintiff's fraud claim should be dismissed for the separate reason that it (like many of its other claims) is duplicative of its breach of contract claim; that is, it fails to allege a duty separate from that under the contract.  In other words, the Amended Complaint merely alleges "misleading statements . . . falsely indicating an intent to perform under a contract and/or concealing a breach of the contract . . . ."  *IKEA N. Am. Servs., Inc. v. Ne. Graphics, Inc.*, 56 F. Supp. 2d 340, 342 (S.D.N.Y. 1999).  Such claims "do not give rise to an action for fraud."  *Id.*; *see also Khurana v. Wahed Inv., LLC*, No. 18-cv-0233, 2020 WL 364794, at *12 (S.D.N.Y. Jan. 8, 2020), *report & recommendation adopted*, 2020 WL 364022 (S.D.N.Y. Jan. 22, 2020) (rejecting fraud claim where "the alleged misrepresentations are central—not collateral—to th[e] contract").  Indeed, the Amended Complaint specifically alleges HSBC's contractual duties to "'comply with the Security Procedures' and to 'follow the Security Procedures upon receipt" of any payment instruction relating to the Account."  Am. Compl. ¶ 16.  The false statements Plaintiff accuses HSBC of making, *id.* ¶ 19, are at

---

that HSBC "was aware of the falsity of the statements when they were made," Am. Compl. ¶ 130—is wholly speculative and conclusory, and does not support even a weak inference of fraudulent intent.

most indications of an intent to comply with those duties.  Plaintiff has therefore failed to state a claim for fraud.

Additionally, even putting aside the existence of the parties' contract, Plaintiff has failed to allege an essential element, namely, a "[mis]representation of a material *existing* fact . . . ." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995) (emphasis added).  A claim for fraud should be dismissed where, as here, it is premised upon representations of *future* intent rather than false statements of material *existing* fact.  *See Papp v. Debbane*, 16 A.D.3d 128, 128 (1st Dep't 2005) (affirming order granting motion to dismiss fraud claims because they are "premised upon representations of future intent"); *Soley v. Wasserman*, 823 F. Supp. 2d 221, 235-36 (S.D.N.Y. 2011) (dismissing fraud claims based on "promises or statements of future intent" where plaintiff "failed to allege facts which plausibly show that [defendant] had a present intention not to perform when he made his alleged promises").  Thus, because "Plaintiff's complaint did not allege either a present intent not to carry out the promises of future action, or, in fact, any factual assertions from which this conclusion can be drawn, [it] thus fail[s] to state a cause of action for fraud based on a misstatement of future intentions."  *Lanzi v. Brooks*, 43 N.Y.2d 778, 779-80 (1977).

### E.   Plaintiff fails to state a claim for breach of the covenant of good faith and fair dealing

Under New York law, a claim for breach of the implied covenant of good faith and fair dealing should be dismissed when the alleged breach is "merely a breach of the underlying contract," not a separate cause of action.  *MeehanCombs Glob. Credit Opportunities Funds, LP v. Caesars Ent. Corp.*, 80 F. Supp. 3d 507, 514 (S.D.N.Y. 2015) (citations and quotation marks omitted).  "'[I]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or

other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.'" *Id.*  Thus, a claim for breach of the implied covenant "will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *Merryman v. J.P. Morgan Chase Bank, N.A.*, No. 15-cv-9188, 2016 WL 5477776, at *11 (S.D.N.Y. Sept. 29, 2016) (quoting *Boart Longyear Ltd. v. All. Indus., Inc.*, 869 F. Supp. 2d 407, 419 (S.D.N.Y. 2012)).

Plaintiff's implied covenant claim alleges nothing more than that HSBC acted to "deprive Plaintiff of benefits under the contract" by allowing the allegedly unauthorized ACH payments.  Am. Compl. ¶ 138.  As such it should be dismissed as duplicative.  *See Chambers v. HSBC Bank USA, N.A.*, 2020 WL 7261155, at *3 (granting motion to dismiss implied covenant claims because "Plaintiff's breach of contract and breach of implied covenant claims both arise from the same allegation:  that HSBC inappropriately assessed NSF fees on payments resubmitted for processing"); *Costoso*, 74 F. Supp. 3d at 573 (granting motion to dismiss implied covenant claim "because the alleged underlying facts and conduct supporting the breach of contract claim—namely, that the Defendant honored ACH debits originated by illegal payday lenders and assessed overdraft and/or returned item fees as a result—underlies the Plaintiff's claim for breach of the covenant of good faith and fair dealing").

- 21 -

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff 123RF LLC's Amended Complaint should be dismissed with prejudice.

Dated:  New York, New York
        March 7, 2022

PHILLIPS LYTLE LLP


By: * /s/ Preston L. Zarlock*      
      Preston L. Zarlock
      Jeremy M. Amar-Dolan
Attorneys for Defendant
*HSBC Bank USA, N.A.*
620 Eighth Avenue, 38th Floor
New York, New York  10018-1442
Telephone No. (212) 759-4888
pzarlock@phillipslytle.com
jamar-dolan@phillipslytle.com

Doc #10157988