# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| 123RF LLC, | ) | Case No. 1:21-cv-08519-NRB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HSBC BANK USA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF 123RF LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS

LEWIS & LLEWELLYN LLP
Paul T. Llewellyn (CA Bar No. 216887)
(*admitted pro hac vice*)
Tobias Snyder (TS3552)
Evangeline A.Z. Burbidge (CA Bar No. 266966)
(*admitted pro hac vice*)
pllewellyn@lewisllewellyn.com
tsnyder@lewisllewellyn.com
eburbidge@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 800-0590

FENSTERSTOCK, P.C.
Evan S. Fensterstock (EF2084)
efensterstock@fensterstockesq.com
200 Vesey Street, 24th Floor
New York, New York 10281
Telephone: (212) 859-5026

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES……………………………………………………….. ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................... 2

ARGUMENT ....................................................................................................... 3

I.     DEFENDANT'S POINT I: PLAINTIFF'S CLAIMS ARE NOT
TIME BARRED.............................................................................................. 4

     A.    HSBC USA Cannot Shorten the One-Year "Period of Repose" in
UCC § 4-A-505. ................................................................................ 4

     B.    Even Absent Sections 4-A-204 and 4-A-505, the Contractual Limitations
Period is Unreasonable. .................................................................... 8

II.    DEFENDANT'S POINT II: PLAINTIFF'S STATUTORY AND NON-CONTRACT
CLAIMS ARE NOT PRECLUDED BY ARTICLE 4-A. ................................................. 10

III.   DEFENDANT'S POINT III: THE ECONOMIC LOSS DOCTRINE DOES
NOT BAR PLAINTIFF'S TORT CLAIMS. ................................................... 11

IV.   DEFENDANT'S POINT IV: THE FAC ADEQUATELY PLEADS PLAINTIFF'S
NON-CONTRACT CLAIMS. ......................................................................... 12

     A.    Plaintiff States Claims for Negligence and Gross Negligence. .......................... 12

     B.    Plaintiff States a Claim Under GBL § 349. ........................................................ 13

     C.    Plaintiff States a Claim for Fraud. ...................................................................... 14

     D.    Plaintiff States a Claim for Breach of Fiduciary Duty. ........................................ 16

     E.    Plaintiff States a Claim for Good Faith and Fair Dealing. ................................... 17

CONCLUSION.................................................................................................... 19

## TABLE OF AUTHORITIES

**CASES**

*2006 Calandra Irrevocable Tr. v. Signature Bank Corp.*,
No. 09 CV 08526 GBD, 2010 WL 5174331 (S.D.N.Y. Dec. 13, 2010) ............................ 10

*2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*,
816 F. Supp. 2d 236 (S.D.N.Y. 2011) ................................................................ 10

*Adams v. Clark*,
239 N.Y. 403 (1925) ...................................................................................... 16

*Adams v. Gillig*,
199 N.Y. 314 (1910) ...................................................................................... 16

*ADT Operations, Inc. v. Chase Manhattan Bank, N.A.*,
173 Misc. 2d 959 (N.Y. Sup. Ct. 1997) ............................................................... 17

*Banco del Austro, S.A. v. Wells Fargo Bank, N.A.*,
215 F. Supp. 3d 302 (S.D.N.Y. 2016) ................................................................. 11

*Bank Brussels Lambert, S.A. v. Intermetals Corp.*,
779 F. Supp. 741 (S.D.N.Y. 1991) .................................................................... 13

*Bi–Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*,
10 N.Y.3d 187 (2008) .................................................................................... 17

*Bingham v. Zolt*,
683 F. Supp. 965 (S.D.N.Y. 1988) .................................................................... 14

*Bd of Regents of Univ. of the State of N.Y. v. Tomanio*,
446 U.S. 478 (1980) ....................................................................................... 6

*Burns v. Delaware Charter Guarantee & Tr. Co.*,
805 F. Supp. 2d 12 (S.D.N.Y. 2011) .............................................................. 11-12

*Chimento Co. v. Banco Popular*,
208 A.D.2d 385 (1994) ................................................................................... 17

*D&S Restoration, Inc. v. Wenger Constr. Co.*,
75 N.Y.S.3d 505 (2018) .................................................................................... 8

*Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*,
68 N.Y.2d 954 (1986) ................................................................................. 15-16

*Dubai Islamic Bank v. Citibank, N.A.*,
     126 F. Supp. 2d 659 (S.D.N.Y. 2000)..........................................................................12, 13

*Exec. Plaza, LLC v. Peerless Ins. Co.*,
     22 N.Y.3d 511 (2014) ................................................................................................8

*Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*,
     328 F. Supp. 2d 443 (S.D.N.Y. 2004).....................................................................14

*Fernandez v. Chertoff*,
     471 F.3d 45 (2d Cir. 2006).....................................................................................3-4

*Fleisig v. ED&F Man Cap. Markets, Inc.*,
     2021 WL 2678675 (S.D.N.Y. June 30, 2021) ..........................................................8

*Gorham-DiMaggio v. Countrywide Home Loans, Inc.*,
     592 F. Supp. 2d 283 (N.D.N.Y. 2008), 421 F. App'x 97 (2d Cir. 2011)...............13

*Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*,
     17 N.Y.3d 565 (2011) ..........................................................................................12-13

*Hydro Invs., Inc. v. Trafalgar Power Inc.*,
     227 F.3d 8 (2d Cir. 2000).........................................................................................13

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*,
     1 F. Supp. 3d 34 (E.D.N.Y. 2014) ...........................................................................17

*Lerner v. Fleet Bank, N.A.*,
     459 F.3d 273 (2d Cir. 2006).....................................................................................15

*Ma v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
     597 F.3d 89 (2d Cir. 2010)..........................................................................5, 10, 11

*Mfrs. Hanover Trust Co. v. Yanakas*,
     7 F.3d 310 (2d Cir. 1993).........................................................................................17

*MPI Tech A/S v. Int'l Business Machines Corp., No.*,
     2017 WL 481444 (S.D.N.Y. Feb. 6, 2017)................................................................6

*Nechis v. Oxford Health Plans, Inc.*,
     421 F.3d 96 (2d Cir. 2005).........................................................................................4

*New York Univ. v. Continental Ins. Co.*,
     87 N.Y.2d 308 (1995) ...............................................................................................12

*ReAmerica, S.A. v. Wells Fargo Bank Int'l*,
   577 F.3d 107 (2d Cir. 2009) .............................................................. 11

*Receivers of Sabena S.A. v. Deutsche Bank A.G.*,
   142 A.D.3d 242 (2016) ...................................................................... 11

*Regatos v. N. Fork Bank*,
   5 N.Y.3d 401 (2005) ........................................................................ 4-8

*Regatos v. N. Fork Bank*,
   257 F. Supp. 2d 642 (S.D.N.Y. 2003) ............................................... 6, 7

*Scott v. Dime Sav. Bank*,
   886 F. Supp. 1073 (S.D.N.Y. 1995) ................................................... 17

*Silvercorp Metals Inc. v. Anthion Mgmt. LLC*,
   36 Misc. 3d 1231, 959 N.Y.S.2d 92 (N.Y. Sup. Ct. 2012) ................. 14

*Spirit Locker, Inc. v. EVO Direct, LLC*,
   696 F. Supp. 2d 296 (E.D.N.Y. 2010) ............................................... 14

*Torcik v. Chase Manhattan Bank, Inc.*,
   No. 02-CV-5994 (FB), 2005 WL 2155138,
   (E.D.N.Y. Sept. 7, 2005), 208 F. App'x 24 (2d Cir. 2006) ................. 13

*Wechsler v. HSBC Bank USA, N.A., No.*,
   2016 WL 1688012 (S.D.N.Y. Apr. 26, 2016), 674 F. App'x 73 (2d Cir. 2017) .............. 5, 9

**STATE STATUTES**

New York

    General Business Law § 349 ..................................................... 1, 13, 14

    Uniform Commercial Code Article 4 ................................... 1, 2, 4-11, 18

Plaintiff 123RF LLC ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant HSBC BANK USA, N.A.'s ("HSBC USA" or "Defendant") motion to dismiss (Dkt. No. 28 ("Mov. Br.")) Plaintiff's First Amended Complaint (Dkt. No. 25 ("FAC")). For the reasons that follow, Defendant's motion to dismiss should be denied.

## PRELIMINARY STATEMENT

Defendant raises four arguments in its efforts to challenge the FAC: (1) that Plaintiff's claims are all time barred by the limitations provision in the parties' agreement; (2) that Plaintiff's statutory and common law claims are preempted by N.Y. UCC Article 4-A ("Article 4-A"); (3) that Plaintiff's non-contract claims are barred by the economic loss doctrine; and (4) that Plaintiff fails to state a claim for (i) negligence or gross negligence, (ii) violation of General Business Law Section 349 ("GBL § 349"), (iii) breach of fiduciary duty; (iv) fraud, or (v) breach of the covenant of good faith and fair dealing.  Each of Defendant's arguments fails.

Importantly, with respect to Plaintiff's breach of N.Y. UCC § 4-A-204(1) and breach of contract claims, Defendant concedes in its brief that the determination of "whether the payment orders given to [Defendant] were 'authorized'" under the U.S. Commercial Deposit Account Agreement ("USCDAA") requires a review of "extra-complaint sources" and is "typically address[ed] at summary judgment," rather than at this pre-answer motion to dismiss stage.  Mov. Br. at 14 n.8.  This question of fact also bears directly on the Defendant's main argument concerning the statute of limitations.  For this reason alone, Defendant's motion to dismiss Plaintiff's breach of N.Y. UCC § 4-A-204(1) and breach of contract claims should be denied. Moreover, Defendant does not argue that Plaintiff fails to articulate facts sufficient to support its claims for breach of N.Y. UCC § 4-A-204(1) or breach of contract.  Plaintiff has adequately pled its causes of action.  *See generally* Mov. Br.; *see also* Mov. Br. at 14 n.8.

First, Plaintiff's claims are timely.  It is beyond cavil under New York law that a bank cannot by contract amend the statute of repose articulated in N.Y. UCC Section 4-A-505 to shorten the time a customer has to notify their bank that the bank has honored unauthorized electronic bank transfers.  Even absent the statutory prohibition, which defeats Defendant's argument entirely, the limitations provision relied on by Defendant is unreasonable as applied to the facts of this case.  Second, Article 4-A does not occupy the field and preclude all claims relating to electronic funds transfers.  Rather, the statute prohibits claims that would allow recovery "inconsistent" with the rights and obligations of the statute.  Here, Defendant fails to establish that recovery on Plaintiff's statutory and non-contract claims would provide relief inconsistent with the statute; indeed, recovery for Plaintiff would be consistent with the statute.  Third, the economic loss doctrine does not bar Plaintiff's recovery on its tort claims, as these claims are based on duties and conduct falling outside the bounds of Plaintiff's contract claims.  Finally, Plaintiff pleads facts sufficient to state its tort and fraud claims, and Defendant's challenges to these claims fail under New York law.

## STATEMENT OF FACTS

Defendant, a commercial bank, authorized nearly $1.5 million (and counting) of Automated Clearing House ("ACH") debits from Plaintiff's commercial bank account (the "Account") without Plaintiff's knowledge or consent from early 2020 through December 2021.  FAC ¶ 1, 3-4, 31-32.  Defendant permitted these random, fraudulent, unauthorized ACH debits to occur in different amounts of money to different recipients over a prolonged period of time, despite the fact that Defendant fraudulently misrepresented, and fraudulently induced Plaintiff to rely on such misrepresentations and omissions concerning, Defendant's security protocols, protections, and the methods by which electronic transfers could take place in connection with the Account.  *Id.* ¶¶ 15, 19-20, 24-26, 119, 128, 131, 132; *see also* FAC Ex. B.  Plaintiff timely

alerted Defendant to the strange ACH debits and never received any explanation or an investigation report, despite requesting it many times.  FAC ¶¶ 20, 42.  In fact, despite Plaintiff timely reporting the problem to Defendant (not the other way around with Defendant reporting the issue to Plaintiff) and Plaintiff filing its original Complaint on October 15, 2021, Defendant incredibly *still* processes unauthorized ACH debits on the Account even after the original Complaint was filed.  *Id.* ¶¶ 2, 3, 80, 85.  To this day, Defendant still claims to not know what happened.  *Id.* ¶ 43.

Indeed, Defendant has already tacitly admitted its liability by returning hundreds of thousands of dollars to Plaintiff for transactions HSBC USA declined to claim were untimely noticed.  *Id.* ¶¶ 4, 44-46, 61.  However, Plaintiff provided timely notice for *all* transactions and Defendant unjustifiably refuses to pay Plaintiff the remaining $998,518.54 in unauthorized ACH debited funds.  *Id.* ¶¶ 4-5, 75, 92.

Interestingly, prior to commencing this lawsuit, Defendant refused to pay Plaintiff back under a purported "one-day-rule" (*id.* ¶¶ 62, 64, 65, 67, 71, 76); yet Defendant makes no mention of this "rule" or "law" in its motion to dismiss; that is because it was Defendant's meritless attempt to side-step its obligations to Plaintiff, and to all consumers, by standing behind a fake "rule."  *See generally* Mov. Br.  Indeed, now, Defendant attempts to further avoid its contractual and fiduciary obligations, and its fraudulent conduct, by confusing legal issues (such as the statute of repose and the statute of limitations) and trying to place blame on the victim, the Plaintiff, rather than accept responsibility under the law and pay what Defendant admittedly owes.  *See, e.g.*, Mov. Br. at 1, 5-10.

## ARGUMENT

"During the pleadings stage in litigation, '[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims.'"

*Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006), quoting *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (citations omitted). "Thus," a court "assume[s] the truth of all well-pleaded factual allegations and draw[s] all reasonable inferences in favor of the plaintiff." *Id.* Drawing all reasonable inferences in Plaintiff's favor, Defendant's motion to dismiss must be denied.

## I.    DEFENDANT'S POINT I: PLAINTIFF'S CLAIMS ARE NOT TIME BARRED.

### A.    HSBC USA Cannot Shorten the One-Year "Period of Repose" in UCC § 4-A-505.

Defendant argues that Plaintiff's claims are untimely because HSBC USA has drafted a strict one-year contractual limitations period into the parties' agreement. Defendant's argument misses the mark. Under New York law, Defendant cannot alter by agreement the one-year statute of repose in Article 4-A. *Regatos v. N. Fork Bank*, 5 N.Y.3d 395, 402 (2005). *Regatos* involved two certified questions from the Second Circuit to the New York Court of Appeals, one of which being:

> whether a commercial bank customer can recover funds that the bank improperly transferred out of his account, even though he did not notify the bank of the unauthorized transfer until well after the time limit stated in his account agreement. This issue requires us to decide whether the one-year period of repose in our Uniform Commercial Code § 4-A-505 may be modified by agreement.

*Regatos*, 5 N.Y.3d at 398. The Court of Appeals unequivocally said no:

> The one-year period of repose in UCC 4-A-505, governing the customer's time in which to notify the bank of the unauthorized transfer, may not be modified by contract.

*Id.* at 398-99. As the court explained, "[p]ermitting banks to vary the notice period by agreement would reduce the effectiveness of the statute's one-year period of repose as an incentive for banks to create and follow security procedures." *Id.* at 402; *see also* UCC § 4-A-204 ("[T]he obligation of a receiving bank to refund payment . . . may not otherwise be varied by

agreement.").

Defendant offers no caselaw contrary to *Regatos*.  Defendant relies primarily on *Wechsler v. HSBC Bank USA, N.A.*, No. 15-cv-5907, 2016 WL 1688012 (S.D.N.Y. Apr. 26, 2016), aff'd, 674 F. App'x 73 (2d Cir. 2017), an unpublished decision, *which had nothing to do with fraudulent withdrawals or Article 4-A*.  Rather, *Wechsler* involved allegations that HSBC USA *itself* had improperly charged its customer a recurring service fee.  *See Wechsler*, *supra*, at *1 ("Wechsler contends that HSBC has engaged in a practice of charging certain customers a $5.00 monthly maintenance fee on their savings accounts, in violation of those accounts' terms and conditions.").

The period of repose established in Section 4-A-505 applies when a bank "has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank"—i.e., when the bank honors a payment order ostensibly issued by the customer and debits the customer's account to cover it. That is the situation here. It does not apply when the bank debits a customer account on its own initiative to pay a service fee, as in *Wechsler*.  Defendant proclaims, "[t]he fact that neither the District Court nor the Second Circuit in *Wechsler* felt *Regatos* was a bar to enforcing the Limitations Clause speaks volumes."  Mov. Br. at 9.  This is nonsensical—there is no reason why the court in *Wechsler*, which did not involve unauthorized payment orders, would follow a decision interpreting a statute specifically and narrowly addressing unauthorized payment orders.

Similarly, *Ma v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 597 F.3d 84 (2d Cir. 2010), cited by Defendant, also did not involve any attempt to shorten the one-year period of repose in Section 4-A-505 by contract.  Rather, the court held that where the plaintiff pled tort claims related to the bank's payment of unauthorized transfers, the one-year period of repose superseded

the longer statutes of limitations, such that the plaintiff's common law negligence claims were also barred after one year.  Meanwhile, *MPI Tech A/S v. Int'l Business Machines Corp.*, No. 15-cv-4891, 2017 WL 481444 (S.D.N.Y. Feb. 6, 2017), also heavily relied upon by Defendant, does not involve banks at all, but rather the alleged breach of a commercial agreement between a software vendor and a hardware manufacturer.  Again, this case has nothing to do with Section 4-A-505 and does not help Defendant escape the clear holding in *Regatos*.

Defendant's efforts to distinguish *Regatos* also fail.  Defendant first asserts that *Regatos* is inapplicable by arguing that Section 4-A-505's statute of repose actually stands alongside an overlapping limitations period (statutory source unidentified), such that they act as twin bars to recovery working in concert—Defendant argues that while Section 4-A-204 prevents the one-year statutory period of repose from being altered by contract, Defendant is still free to alter the *limitations period* by contract.  Defendant is mistaken.  As Judge Scheindlin explained in the trial court matter that led to the certified question in *Regatos*, "[o]f course, a statute of limitations *is* a statute of repose, but the broader term 'statute of repose' indicates any statute that limits the ability of a litigant to prosecute an action."  *Regatos v. N. Fork Bank*, 257 F. Supp. 2d 632, 644 (S.D.N.Y. 2003) (alteration in original), citing *Bd. of Regents of Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478 (1980). As much as Defendant wishes to avoid the controlling and dispositive holding in *Regatos*, it cannot.

Here, New York set its policy of repose with regard to unauthorized payment orders using the form in Sections 4-A-204 and 4-A-505, rather than a statute of limitations.  Under Section 4-A-204, if a bank has debited a customer account to cover an unauthorized payment order received outside the parties' agreed upon security procedure, the bank "shall refund any payment of the payment order received from the customer . . . and shall pay interest on the

refundable amount calculated from the date the bank received payment to the date of the refund."

The "obligation of a receiving bank to refund payment . . . may not . . . be varied by agreement."

*Id*. This statute creates an "absolute duty" to refund unauthorized payments where required by

Article 4-A. *Regatos*, 257 F. Supp. 2d at 642. This absolute duty is not imposed, however, and

the bank is entitled to retain the payment, if the customer fails to notify the bank of the

unauthorized transfer within one year. UCC § 4-A-505. The bank cannot by contract accelerate

its entitlement to retain payment. Indeed, Plaintiff's statutory claim under Article 4-A did not

even accrue until late 2021, when Defendant refused to issue the refunds required by Section 4-

A-204. FAC ¶ 75.

Defendant next argues that *Regatos* does not apply because the contractual limitations in

the parties' agreement "is one year, not less than one year." Defendant cites no authority

suggesting this is meaningful. Importantly, Section 4-A-204 prohibits HSBC USA from

"var[ying] by agreement" the statutory period in Section 4-A-505. No exceptions are implied.

As Defendant itself recognizes, the terms "statute of repose" and "statute of limitations" are not

synonymous. Imposing a one-year statute of limitations by contract would be varying the terms

of the statute. Moreover, Defendant seeks to link this one-year limitation period to the first

unauthorized withdrawal, which obviously shortens the notice period for later withdrawals to

less than one year (and extinguishes some claims completely). See Mov. Br. at 6. Further,

allowing a customer one year to file a complaint leaves a shorter period than allowing one year

to *notify* the bank, as providing notice to the bank, requesting reimbursement, and having that

reimbursement refused cannot happen instantaneously. *See, e.g.* FAC ¶¶ 49-75.

The law and statute are clear: HSBC USA cannot alter by agreement the one-year statute

of repose in Section 4-A-505, which obligates the customer to notify their bank of an

unauthorized withdrawal within one year after "notification [reasonably identifying the order] was received by the customer." *Regatos*, 5 N.Y.3d at 398-99; N.Y. UCC Section 4-A-505. Defendant's pre-motion letter admits that Plaintiff informed HSBC USA of all unauthorized withdrawals, at the latest, on March 17, 2021. *See* Dkt. No. 21 at 2 n.1. Plaintiff alleges that HSBC USA provided no notice of these withdrawals, and that Plaintiff did not receive actual notice of them until April 2020. See FAC ¶¶ 31, 32; *see also Regatos*, 5 N.Y.3d at 401 (Article 4A requires actual, not constructive notice of unauthorized withdrawal).

Accordingly, Plaintiff's action is timely.

**B.      Even Absent Sections 4-A-204 and 4-A-505, the Contractual Limitations Period is Unreasonable.**

The contractual limitations provision cited by Defendant is also unenforceable because it is unreasonable. Defendant quotes language from *Fleisig v. ED&F Man Cap. Markets, Inc.*, 2021 WL 2678675, at *8 (S.D.N.Y. June 30, 2021), but fails to include the subsequent sentence: "Such agreements [to shorten statutes of limitations] must be enforced, 'absent proof that the contract is one of adhesion or the product of overreaching, or that the altered period is unreasonably short.'" *Id*.

A contractual limitations period is unreasonable if it results in the "nullification" of claims. *D&S Restoration, Inc. v. Wenger Constr. Co.*, 75 N.Y.S.3d 505, 507 (2d Dep't 2018). The question of whether a limitations period is fair and reasonable is judged "in view of the circumstances of each particular case." *Id*.; *see also Exec. Plaza, LLC v. Peerless Ins. Co.*, 22 N.Y.3d 511, 519 (2014) ("The period of time within which an action must be brought . . . should be fair and reasonable, in view of the circumstances of each particular case. . . . The circumstances, not the time, must be the determining factor." (internal quotation marks and citations omitted.). In this case, the contractual limitations period as applied by Defendant is

unreasonable because it establishes the accrual date for claims before the events giving rise to the claims have even occurred, rendering an action on that claim impossible and nullifying the claim. This is unreasonable.

As discussed above, this case does not resemble the facts in *Weschler*, cited by Defendant. *Wechsler* involved a recurring service charge, meaning the same amount was debited for the same reason directly by the same entity each month—that can be considered a "series." *See Wechsler*, 2016 WL 1688012 at *1. Here, the withdrawals cannot be considered a "series,' regardless of Defendant's attempt to dress them up as such, as they occurred at random times, in different amounts, and moneys were sent to different recipients. FAC ¶ 19-20, 119, 128, 131, 132; *see also* FAC Ex. B. In this case, it is far from clear that the unauthorized withdrawals were initiated by the same individuals or through the same mechanism (information likely within Defendant's control and discoverable), or exploited the same security lapse by Defendant. Under Defendant's interpretation, a customer failing to prosecute one unauthorized withdrawal will, after a year, forever immunize HSBC USA from *any* claim by the customer regarding any future unauthorized withdrawals, regardless of how they were initiated or by whom. This is not, nor is it intended to be, the way it works.

Moreover, Defendant concedes on page 9 of its brief that summary judgment, rather than a motion to dismiss, is the appropriate time to address this factual issue. Mov. Br. at 9 (the statute of repose is "another bar that would apply to all of Plaintiff's claims under any theory— albeit one that would need to be raised on summary judgment"). There is no dispute that Plaintiff notified Defendant within a year of Defendant's misconduct. FAC ¶¶ 31-36.

Accordingly, the contractual limitations period put forward by Defendant is inapplicable, and the one-year period of repose in Section 4-A-505 controls.

## II.  DEFENDANT'S POINT II: PLAINTIFF'S STATUTORY AND NON-CONTRACT CLAIMS ARE NOT PRECLUDED BY ARTICLE 4-A.

Defendant also overstates claim preclusion from Article 4-A.  The cases cited by Defendant establish that the common law cannot create additional obligations beyond those established in Article 4-A, meaning a plaintiff cannot base common law claims on bank conduct consistent with the requirements of that statute.  They do not hold that common law claims relating to electronic funds transfers are *a priori* preempted.  For instance, while the court in *2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*, 816 F. Supp. 2d 222 (S.D.N.Y. 2011) affirmed that claims regarding unauthorized transfers fall under the ambit of Article 4-A, it did not state the statute occupied the field, but rather that the statute "preclude[s] common law claims that would impose liability *inconsistent with the rights and liabilities expressly created by [the] article*."  *Id.* at 236 (emphasis added).  This decision came on summary judgment, not at the pleading stage; the plaintiff's common law claims were addressed on the merits, based on evidence.[1]

Also decided on summary judgment was *Ma v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 597 F.3d 84 (2d Cir. 2010).  In that case, the plaintiff had failed to notify the bank of unauthorized transfers within one year, running afoul of Section 4-A-505, but argued it could raise other tort claims under longer statutes of limitation.  *Id.* at 88.  The court did not hold that plaintiff's common law claims were precluded but that they were subject to the statute of repose in Section 4-A-505, evaluating on the merits when the notice period began to run.  *Id.* at 90.  The Second Circuit noted that "[n]ot all common law claims are per se inconsistent with [Article 4-

---

[1] The plaintiff's common law claims passed the pleading stage, after argument on a motion to amend, and so clearly were not considered preempted as a matter of law by Article 4A.  *See 2006 Calandra Irrevocable Tr. v. Signature Bank Corp.*, No. 09 CV 08526 GBD, 2010 WL 5174331, at *3 (S.D.N.Y. Dec. 13, 2010).

A's] regime," adding that "[b]ecause Article 4A's statute of repose only applies to claims that are 'inconsistent' with the Article, we do not believe that it was intended to shield banks from all fraud claims—or other common law claims raised more than a year after an electronic transfer occurred." *Id.* at 89.  The Second Circuit in *ReAmerica, S.A. v. Wells Fargo Bank Int'l*, 577 F.3d 102 (2d Cir. 2009) addressed an almost identical issue, holding that allowing a common law negligence claim to proceed after the one-year period of repose would be inconsistent with the duties and liabilities of Article 4-A; once again, application of the period of repose was evaluated on the merits.  *Id.* at 107.

The unauthorized withdrawal cases at the pleading stage cited by Defendant also found that Article 4-A precluded claims "inconsistent" with the statute.  *See Receivers of Sabena S.A. v. Deutsche Bank A.G.*, 142 A.D.3d 242, 244 (1st Dep't 2016) ("[B]ecause the [defendant] bank's return of the funds to the originator's bank fully complied with the requirements of article 4-A, no common-law claim for conversion may be predicated on that conduct"); *Banco del Austro, S.A. v. Wells Fargo Bank, N.A.*, 215 F. Supp. 3d 302, 306 (S.D.N.Y. 2016) (dismissing contract and negligence claims because plaintiff did "not plausibly allege that [defendant] deviated from [the security] procedure" in the parties' contract).

## III.   DEFENDANT'S POINT III: THE ECONOMIC LOSS DOCTRINE DOES NOT BAR PLAINTIFF'S TORT CLAIMS.

Defendant argues that New York's "economic loss doctrine" bars all of Plaintiff's tort claims.  Mov. Br. at 13.  Notwithstanding the existence of a contract between the parties, the economic loss doctrine will not bar claims where the plaintiff alleges the defendant "has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations," or where "the public interest in seeing [the contract] performed with reasonable

11

care . . . give[s] rise to a duty of reasonable care in performance of the contract obligations," or "[w]here a party has fraudulently induced the plaintiff to enter into a contract, . . . or where a party engages in conduct outside the contract but intended to defeat the contract." *Burns v. Delaware Charter Guarantee & Tr. Co.*, 805 F. Supp. 2d 12, 25–26 (S.D.N.Y. 2011), quoting *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316 (1995).

Plaintiff alleges facts to meet these exceptions.  As Defendant notes, "the economic loss doctrine does not apply to negligence claims arising . . . out of 'the violation of a professional duty.'"  Mov. Br. at 13.  "Courts have stated that banks owe a duty of care to their customers." *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 667 (S.D.N.Y. 2000).  Plaintiff alleges the same.  FAC ¶ 101.  Plaintiff further alleges that Defendant acted recklessly, including by continuing to process unauthorized ACH withdrawals without notice well after Plaintiff alerted Defendant to the issue.  FAC ¶¶ 3, 46, 82-83, 103.  Plaintiff alleges misrepresentations intended to induce Plaintiff to enter into the parties' agreement.  FAC ¶¶ 19-20, 119, 128, 131, 132.  And Plaintiff alleges that Defendant dragged its feet and frustrated Plaintiff's attempts to provide notice, an act not covered by a specific provision of the parties' contract.  FAC ¶¶ 49-58.

Because Plaintiff alleges duties and wrongful behavior existing outside the bounds of the parties' contract, the economic loss doctrine does not apply.

## IV.   DEFENDANT'S POINT IV: THE FAC ADEQUATELY PLEADS PLAINTIFF'S NON-CONTRACT CLAIMS.

### A.   Plaintiff States Claims for Negligence and Gross Negligence.

Defendant's argument on Plaintiff's negligence claim is based on the broad argument that "the 'relationship between a bank and its depositor is one of debtor and creditor' which does not support a cause of action for negligence."  Def. Br. at 14.  Defendant overstates the case. Defendant attempts to support this proposition by citing to *Greenberg, Trager & Herbst, LLP v.*

12

*HSBC Bank USA*, 17 N.Y.3d 565, 578 (2011), but the language cited refers to a claim for negligent misrepresentation.  A claim for negligent misrepresentation requires the breach of a duty arising from a "special relationship" imparting an obligation to convey correct information. *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

Claims for negligence or gross negligence do not require a "special relationship" to impart the duty, however, and banks are not immunized from negligence claims by customers. *See Dubai Islamic Bank*, *supra*, 126 F. Supp. 2d at 667 ("Courts have stated that banks owe a duty of care to their customers."); *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283, 298 (N.D.N.Y. 2008), aff'd, 421 F. App'x 97 (2d Cir. 2011) ("Banks do owe a general duty of care to their customers to conduct business reasonably."); *Torcik v. Chase Manhattan Bank, Inc.*, No. 02-CV-5994 (FB), 2005 WL 2155138, at *4 (E.D.N.Y. Sept. 7, 2005), aff'd, 208 F. App'x 24 (2d Cir. 2006), citing *Bank Brussels Lambert, S.A. v. Intermetals Corp.*, 779 F.Supp. 741, 747 (S.D.N.Y. 1991) ("Courts in this circuit have held that a bank has 'a duty to exercise reasonable skill and care in carrying out its activities for its customers.'").  The FAC cites this duty.  FAC ¶ 101 ("Defendant owed a duty to Plaintiff to act as a reasonably prudent commercial banking company would act.").  Further, the negligent acts cited in Plaintiff's negligence and gross negligence claims are not simply duplicative of the breaches cited in its breach of contract claim, but also include acts not keyed to the parties' agreement. *Compare id.* ¶¶ 103 and 109 *with id.* ¶ 115.

### B.      Plaintiff States a Claim Under GBL § 349.

Plaintiff alleges a claim under GBL § 349. Defendant raises three arguments in opposition: (1) that Plaintiff is not a consumer, (2) that Plaintiff fails to allege "consumer oriented" conduct, and (3) that Plaintiff fails to allege a misleading act.  Defs. Br. at 16. Regarding the latter argument, Plaintiff's GBL claim is based on three specific deceptive acts:

13

(1) HSBC USA's practice of denying reimbursements based on contractual language unavailable to the customer, (2) maintaining a practice of knowingly allowing ACH debits without controls unless customers paid an additional fee, and (3) misleading customers as to the scope of promised security procedures. FAC ¶ 118. These practices are distinct from the breaches alleged in Plaintiff's contract claim, and Defendant does not argue that any of these acts are insufficient to allege a claim under GBL § 349.

Regarding the first two points, "the 'consumer-orientated act' prong does not preclude the application of GBL § 349 to disputes between businesses." *Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc*., 328 F. Supp. 2d 443, 449 (S.D.N.Y. 2004). "GBL 349 applies to disputes between businesses in instances where an organizational plaintiff is similarly-situated to other consumers." *Silvercorp Metals Inc. v. Anthion Mgmt. LLC*, 36 Misc. 3d 1231(A), 959 N.Y.S.2d 92 (N.Y. Sup. Ct. 2012). This case does not involve a "unique private transaction[]" between sophisticated business parties," which have no public implication. *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 301 (E.D.N.Y. 2010). Plaintiff alleges it entered into a standard form agreement with HSBC USA and alleges that members of the public faced the same deceptive practices from HSBC USA. FAC ¶¶ 3, 15, 118. Notably, HSBC USA does not suggest that the practices challenged in Plaintiff's GBL claim are limited to commercial accounts and are not followed as well for consumer accounts.

### C.   Plaintiff States a Claim for Fraud.

To state a claim for fraud with particularity, a plaintiff must allege: "1) precisely what statements were made 2) the time and place of each such statement and the person responsible for making . . . the same 3) the content of such statements and the manner in which they misled the plaintiff and 4) what the defendant obtained as a consequence of the fraud." *Bingham v. Zolt*, 683 F. Supp. 965, 972-73 (S.D.N.Y. 1988). Defendant argues that Plaintiff fails to "specify the

who, what, where, when, and how" of the alleged misrepresentation.  Mov. Br. at 18.  This is incorrect.  Plaintiff identifies specific advertising copy that it alleges to be fraudulent, that Plaintiff reasonably relied on these false representations in making its determination to open the Account, and explains why these representations were incorrect.  FAC ¶¶ 19-20.  Plaintiff also identifies representations made by HSBC USA personnel on-site at Plaintiff's offices on or around the time Plaintiff first opened the account, in August 2012, during which the HSBC USA representative made representations regarding the security procedures that would be used for the account.  FAC ¶¶ 15, 24-26.

With respect to scienter, Plaintiff specifically alleges that Defendant made misrepresentations and omissions for the purpose of inducing Plaintiff to open the Account with Defendant, as the security protocols were a driving factor in Plaintiff's decision to open the Account.  FAC ¶¶ 15, 19, 24-26, 128-132.  Defendant concedes that allegations of scienter need only be pled "generally."  Mov. Br. at 18, n.10, citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  Plaintiff has not only alleged scienter generally, but it has specifically alleged facts giving rise to an inference of fraudulent intent, *to wit*, that Defendant's "representations were material to Plaintiff and were key to Plaintiff permitting Defendant to continue to manage Plaintiff's assets," FAC ¶ 129, and that Defendant fraudulently omitted information "in order to induce Plaintiff" into acquiring the Account.  *Id.* ¶ 131; *see also id.* ¶¶ 15, 19, 24-26, 128-132.

Furthermore, Plaintiff's fraud claim is not duplicative of its breach of contract claim because the fraudulent representations and omissions made by Defendant were collateral to Defendant's contractual obligations and were made to induce Plaintiff into contracting with Defendant.  *See Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954,

956 (1986); *So*; *see, e.g.*, *id.* ¶¶ 15, 19, 131.  For example, in 2012, an employee of Defendant visited Plaintiff's offices and instructed them on the use of the Security Device and the procedure to access the Account through the HSBCnet portal, and how to initiate and approve account transfers.  *Id.* ¶ 25.  At this time, based on Defendant's representations and omissions, Plaintiff understood these procedures to be the sole means to initiate transfers from the Account, and at no time did any HSBC employee suggest that any other procedures existed that were capable of initiating debits from the Account, such as the ability to make ACH debits from the Account giving rise to this lawsuit.  *Id.* ¶ 26.

Defendant's final effort at attacking Plaintiff's fraud claim by asserting that Plaintiff did not allege that Defendant misrepresented a material existing fact also fails.  Mov. Br. at 20. Plaintiff alleged that Defendant made affirmative misrepresentations and omissions concerning the security protocols associated with the Account, separate and apart from the contract, as well as the manner in which transfers can and cannot take place.  FAC ¶¶ 24-26, 128-131.  Likewise, in New York, courts have found that when statements about future conduct is made fraudulently, with the present intent to defraud, such misstatements are actionable as a misrepresentation of a material existing fact.  *See, e.g.*, *Adams v. Gillig*, 199 N.Y. 314, 319 (1910); *see also Adams v. Clark*, 239 N.Y. 403, 410 (1925). Defendant's misrepresentations concerning its actions it will take with respect to security failures was made with the present intent to defraud Plaintiff, and are thus actionable.  FAC ¶ 19.

Accordingly, Defendant's motion to dismiss Plaintiff's fraud claims should be denied.

### D.    Plaintiff States a Claim for Breach of Fiduciary Duty.

Defendant argues Plaintiff's breach of fiduciary duty claim is not adequately pled because Plaintiff has not alleged facts sufficient to establish a fiduciary relationship between the parties.  Mov. Br. at 17.  New York courts have found that a "fiduciary relationship may arise

16

between a bank and its customer where the bank assumes control and responsibility over the customer's assets and operations, or where the customer places special trust and confidence in the bank and thereby becomes dependent upon it." *ADT Operations, Inc. v. Chase Manhattan Bank, N.A.*, 173 Misc. 2d 959, 963 (N.Y. Sup. Ct. 1997), citing *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993); *Chimento Co. v. Banco Popular*, 208 A.D.2d 385, 386 (1st Dep't 1994); *Scott v. Dime Sav. Bank*, 886 F. Supp. 1073 (S.D.N.Y. 1995).   Here, Defendant improperly controlled and handled Plaintiff's moneys by controlling when and where ACH debits would occur without any input, authorization, or notice by Plaintiff.   Defendant's own actions of asserting control over Plaintiff's funds has by itself created a fiduciary relationship between the parties based on Defendant's control over Plaintiff's assets. Defendant also placed special trust in Defendant with respect to the Account based on the Account's purported security measures, and Defendant violated that trust by manipulating the funds.   To the extent that there is a question of fact concerning Defendant's control over Plaintiff's assets and the special trust between them, that should more appropriately be addressed at summary judgment.

Accordingly, Plaintiff has adequately pled a breach of fiduciary duty cause of action.

### E.    Plaintiff States a Claim for Good Faith and Fair Dealing.

Defendant claims that Plaintiff's good faith and fair dealing claim is deficient because Plaintiff "alleges nothing more than that HSBC acted to 'deprive Plaintiff of benefits under the contract.'"   Mov. Br. at 21.   But that is the nature of a good faith and fair dealing claim. "Ordinarily, the covenant of good faith and fair dealing is breached where a party has complied with the literal terms of the contract, but has done so in a way that undermines the purpose of the contract and deprives the other party of the benefit of the bargain." *In re HSBC BANK, USA, N.A.*, Debit Card Overdraft Fee Litig., 1 F. Supp. 3d 34, 51 (E.D.N.Y. 2014), quoting *Bi–Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 198 (2008).   This claim sits

alongside Plaintiff's contract claim.  Plaintiff alleges multiple acts by Defendant that worked to deprive Plaintiff of the benefit of the bargain, even if not an explicit breach of contract.  For instance, Plaintiff alleges that HSBC USA failed to provide a clear mechanism or representatives to whom Plaintiff could submit notice of the unauthorized transactions and dragged its feet in response to Plaintiff's outreach.  FAC ¶¶ 49-56.  Plaintiff does not allege that a specific contractual provision governs the speed of HSBC USA's responses to Plaintiff's communications.  Defendant argues that Plaintiff's reimbursement requests were subject to strict time limits; if so, then Defendant's foot-dragging acted to deprive Plaintiff of the benefit of the bargain, even if these delays did not constitute a breach—Article 4-A does not authorize a bank to frustrate the provision of notice regarding unauthorized transactions.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's motion to dismiss.

Dated: March 28, 2022

Respectfully submitted,

LEWIS & LLEWELLYN LLP

By: ___/s/ Tobias Snyder_____
Paul T. Llewellyn (CA Bar No. 216887)
(*admitted pro hac vice*)
Tobias Snyder (TS3552)
Evangeline A.Z. Burbidge (CA Bar No. 266966)
(*admitted pro hac vice*)
pllewellyn@lewisllewellyn.com
tsnyder@lewisllewellyn.com
eburbidge@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 800-0590

FENSTERSTOCK, P.C.

By: ___/s/ Evan S. Fensterstock_____
Evan S. Fensterstock (EF2084)
efensterstock@fensterstockesq.com
200 Vesey Street, 24th Floor
New York, New York 10281
Telephone: (212) 859-5026

*Attorneys for Plaintiff*